Filed 3/18/14  In re D.D. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re D.D., Minor. | D064656 |
| San Diego County Health & Human Services Agency, | (San Diego County Super. Ct. No. J510306G) |
| Plaintiff and Respondent, | |
| v. | |
| Shelly R., et al., | |
| Defendants and Appellants. | |

APPEALS from orders of the Superior Court of San Diego County, Garry G. Haehnle, Judge.  Affirmed.

Christy C. Peterson, under appointment by the Court of Appeal, for Defendant and Appellant Shelly R.

Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant D.D., Sr.

Thomas E. Montgomery, County Counsel, John E. Philips and Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Shelly R. challenges the juvenile court's orders denying her petition to modify a court order denying reunification services regarding her son D.D. (Welf. & Inst. Code, § 388),[1] and a subsequent order terminating her parental rights (§ 366.26). The biological father, D.D., Sr. (the Father), appeals to the extent that any arguments advanced by Shelly inure to his benefit.

We determine that Shelly's arguments are without merit because the juvenile court was within its discretion to deny the petition to modify. Accordingly, we affirm the juvenile court's orders.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Agency Files a Petition Regarding D.D. Based on Shelly's Failure to Protect D.D. After His Birth*

D.D. was born in December 2012. While at the hospital, and subsequently, Shelly made statements that led hospital staff and social workers to believe that Shelly may not be able to care for D.D. D.D. stayed in the hospital until December 24, 2012, due to a medical condition, and a social worker contacted Shelly when D.D. was ready to be discharged. Shelly was not able to pick up D.D. from the hospital when needed and

---

[1] Unless otherwise indicated, further statutory references are to the Welfare and Institutions Code.

2

would not give information about her housing situation. D.D. was accordingly brought into protective custody.

On December 27, 2012, the San Diego County Health and Human Services Agency (the Agency) filed a petition regarding D.D. pursuant to section 300, subdivisions (b) and (g) alleging failure to protect and no provision for support. An amended petition was filed in February 2013, and the case proceeded only under the subdivision (b) allegation for failure to protect.

Upon investigating Shelly's history, the Agency discovered that Shelly had given birth to six previous children between 1994 and 2005. Shelly's parental rights as to each of her previous children had been terminated. Shelly was currently homeless and living in a tent or with friends. Shelly did not want to live in a shelter, and planned to "start saving next month for an apartment." In connection with earlier juvenile dependency proceedings, it was determined that Shelly was developmentally disabled, with an IQ of 55, and had mental health issues, which included violent outbursts and making verbal threats to social workers. The Father had a criminal history, which included several instances of domestic violence, and Shelly also had a criminal history, including willful cruelty to a child.

Although Shelly obtained reunification services from the Agency for some of her previous children, she was not able to successfully reunify with any of them. During the last instance in which Shelly was involved in the juvenile dependency system, she had been attempting to parent two of her daughters, born in 2003 and 2005. However, in 2007 she was observed inflicting physical and emotional cruelty upon the children by

3

hitting and pinching them in public and using a racial epithet against one of the children. As the officers were taking Shelly away, she stated "I no longer want to deal with these kids, they are too much to handle." Following that incident, reunification services were terminated and the court terminated parental rights.

Prior to the February 22, 2013 jurisdiction and disposition hearing for D.D., the Agency filed a jurisdiction/disposition report and addendum reports. The Agency explained that "the mother's previous psychological evaluations revealed severe developmental disabilities which she was connected to services for, but the mother actively refused to participate in [San Diego] Regional Center services." The psychological evaluations concluded that Shelly's "naiveté in regards to her own independent living needs and skills, poor insight (particularly regarding her own limitations), and her lack of parenting a child places her children at risk." The prior evaluations "did not recommend that the mother care for any children without the constant supervision of another competent adult." To resolve these problems it was recommended that Shelly "address her mental health and mental limitations in therapy to help her develop coping and management strategies for her overall functioning" and that she "follow through and continue to receive support from the [San Diego] Regional Center."

During a mid-January 2013 interview with a social worker, Shelly stated that she had been involved with receiving services at the San Diego Regional Center in the past, but she "wants nothing to do with them." Shelly had last accessed services at the San Diego Regional Center in 2008.

By the time of the February 22, 2013 jurisdiction and disposition hearing, Shelly's attitude about accessing services had started to change, and she was attending anger management, parenting education and domestic violence classes. Shelly stated that she planned to reopen her case with San Diego Regional Center and to make an appointment with a therapist. Shelly was consistently visiting with D.D. on a weekly basis.

B.    *Reunification Services Denied at the Jurisdiction and Disposition Hearing*

At the February 22, 2013 jurisdiction and disposition hearing, the juvenile court declared D.D. a dependent pursuant to section 360, subdivision (d), removed D.D. from Shelly's custody, and placed D.D. in a licensed foster home. Further, pursuant to section 361.5, subdivision (b)(10) and (11), the juvenile court denied reunification services to Shelly. In denying reunification services, the juvenile court stated that there was no evidence that Shelly made any reasonable efforts to treat the problems that led to the removal of her other children.

C.    *Shelly's Petition to Modify the Order Denying Reunification Services*

On August 13, 2013, Shelly filed a petition pursuant to section 388, requesting that the juvenile court modify its February 22, 2013 order denying reunification services and, instead, provide reunification services until the 12-month review date in February 2014.

The section 388 petition to modify was based on the allegations that since the February 22, 2013 order, Shelly (1) had continued to participate in domestic violence, anger management and parenting classes; (2) had accessed services of the Regional Center and was working closely with an independent living services worker to set and meet goals of self-sufficiency; and (3) had one session with a therapist. The petition also

alleged that it was in the best interests of the child to grant the petition because D.D. "has a strong bond with his mother" in that Shelly had been visiting him on a regular basis since birth.

At the hearing on the section 388 petition, counsel for Shelly acknowledged that Shelly did not yet have stable housing. However, counsel argued that the situation was "totally different than it was when the court denied . . . services" in February 2013, because Shelly "has shown that she can do services and she can make progress in services." Counsel also argued that providing services to Shelly was in the best interests of the child because D.D. is "bonded to the mother."

The Agency opposed the petition and continued to recommend that parental rights be terminated so that D.D. could be adopted by his current foster parents, who had expressed a strong interest in adoption. Among other things, the Agency emphasized that Shelly was still homeless and had so far attended only a single therapy appointment. The Agency pointed out that in the most recent instance when Shelly took advantage of services and attempted to reunify with her children, she ended up being overwhelmed, abusive, and unable to care for the children. The Agency stated that it was concerned with Shelly "being able to provide [D.D.] with a safe home environment and meeting his developmental/medical needs."

On August 16, 2013, the juvenile court denied the section 388 petition, finding that Shelly did not make a prima facie showing of changed circumstances or that modification would be in the best interests of the child. The juvenile court explained that despite Shelly's attendance in classes, her efforts to access other services, and her regular

6

visitation with D.D., "the problem remains that she has done this before, and when we let her out in real life situations, she can't keep up with it." The juvenile court stated that "her circumstances are at best changing . . . from [an] almost two-decade history with the Agency." Focusing on the best interests of the child, the juvenile court also stated that Shelly had not shown "it would be in [D.D.]'s best interests to give her services only to . . . have that fail again."

D.    *Termination of Parental Rights*

At the hearing held pursuant to section 366.26 on August 21, 2013, the juvenile court terminated the parental rights of Shelly and the Father, and it referred D.D. to the Agency for adoptive placement, identifying adoption as the permanent plan.

Among other things, evidence was presented at the hearing that on August 19, 2013, Shelly had a visit with D.D. at which she became angry, stating "I am not going to let that White witch take my baby[,]" and threatened to kill the visitation monitors, the caregiver, the social worker, and the judge involved in her case.

Shelly and the Father filed notices of appeal.

II

DISCUSSION

We now turn to Shelly's sole substantive argument, which is a challenge to the court's denial of her petition brought pursuant to section 388 to modify the order denying reunification services.

7

A.     *Applicable Law*

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child.  [Citation.]  A parent need only make a prima facie showing of these elements to trigger the right to a hearing on a section 388 petition and the petition should be liberally construed in favor of granting a hearing to consider the parent's request."  (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.)  " 'A "prima facie" showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited.' "  (*In re B.C.* (2011) 192 Cal.App.4th 129, 141.)

"Determination of a petition to modify is committed to the sound discretion of the juvenile court and, absent a showing of a clear abuse of discretion, the decision of the juvenile court must be upheld."  (*In re S.R.* (2009) 173 Cal.App.4th 864, 870.)

Here, the juvenile court determined that Shelly had not established a prima facie case and accordingly denied the petition without an evidentiary hearing.

Shelly contends that the juvenile court erred because her petition set forth sufficient facts to create a prima facie case of changed circumstances and established that provision of reunification services would be in the best interests of D.D.  As we will explain, we reject both contentions.

B.      *The Juvenile Court Was Within Its Discretion to Conclude That Shelly Did Not Establish a Prima Facie Case of Changed Circumstances*

Shelly contends that she established a prima facie case of changed circumstances sufficient to modify the order denying reunification services because she had reconnected with the San Diego Regional Center, where she was receiving the assistance of an independent living services worker, she had started to attend therapy sessions, and she had continued to attend the parenting, domestic violence and anger management classes.

We begin our analysis by focusing on the basis for the juvenile court's denial of reunification services at the February 22, 2013 hearing. As we have explained, the juvenile court denied reunification services pursuant to section 361.5, subdivision (b)(10) and (11). Those statutory provisions allow denial of reunification services when the parent has previously had reunification services terminated after a failure to reunify, or has previously had parental rights terminated, and the parent has not made subsequent reasonable efforts to treat the problems that led to those outcomes. (§ 361.5, subd. (b)(10) & (11).) In initially denying reunification services in February 2013, the juvenile court decided that Shelly had not made reasonable efforts to treat the problems that led to her loss of parental rights for her six previous children. As we will explain, the juvenile court was within its discretion to determine that as of August 2013, Shelly's section 388 petition did not show a change of circumstance with respect to her failure to treat her problems.

As the juvenile court noted at the section 388 hearing, Shelly was to be commended for reconnecting with the San Diego Regional Center and for making

9

attempts to educate herself about how to be a good parent. However, the juvenile court also reasonably observed that it was evident from Shelly's past history that because of Shelly's intellectual disability and mental health issues, merely accessing services was not sufficient to show that Shelly had addressed her past parenting problems. As the court stated, Shelly had received services in the past and had attempted to parent her children, but she had not succeeded. Among other things, past psychological evaluations concluded that Shelly would have to attend therapy to "help her develop coping and management strategies for her overall functioning." At the time of her section 388 petition, Shelly was only in the very beginning stages of receiving such therapy, having only attended a single session. Further, even though she was now obtaining assistance from an independent living services worker at the San Diego Regional Center, Shelly did not establish that the association with the Regional Center had sufficiently resolved the issues that had led to her past problems.

Also supporting the juvenile court's decision to deny the section 388 petition was the crucial fact that Shelly was still homeless. Due to her homelessness, even though Shelly desired to improve her situation and had taken initial steps to do so, she had not demonstrated any change in her ability to provide a stable and safe home environment for D.D.

Shelly argues that the juvenile court should have held an evidentiary hearing rather than deny her petition on the ground that she did not establish a prima facie case. However, because the petition did not allege any facts showing sufficiently changed circumstances, there is no merit to Shelly's argument that an evidentiary hearing should

10

have been conducted to determine whether evidence of changes circumstances could be developed. (See *In re Edward H.* (1996) 43 Cal.App.4th 584, 593 ["If a petitioner could get by with general, conclusory allegations, there would be no need for an initial determination by the juvenile court about whether an evidentiary hearing was warranted."].) Although the petition described certain steps by Shelly showing that she was interested in improving her parenting abilities, the petition did not set forth any facts indicating that Shelly was now capable of protecting D.D. and otherwise providing for his parental needs. (See *In re Anthony W.* (2001) 87 Cal.App.4th 246, 251 (*Anthony W.*) [conclusory allegations of completion of parenting class and regular visits with child insufficient to make prima facie showing of changed circumstances].)

Based on the above, the juvenile court was well within its discretion to conclude that from the face of the section 388 petition, the most that can be said is that there may have been *changing* circumstances, *not changed* circumstances. A showing of merely changing circumstances, however, "is not sufficient to require a hearing on the merits of [Shelly's] section 388 petition." (*In re A.S.* (2009) 180 Cal.App.4th 351, 358.)

C.    *The Juvenile Court Was Within Its Discretion to Conclude That Modifying the Order Denying Reunification Services Was Not in the Best Interests of the Child*

Shelly contends that it was in D.D.'s best interests for her to be offered reunification services because reunification would maintain the familial bond between D.D. and his mother.

However, as Shelly recognizes, "[o]nce reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability." (*In re*

11

*Marilyn H.* (1993) 5 Cal.4th 295, 309.) Here, D.D.'s foster family was strongly interested in adopting him, which would provide D.D. with the permanency and stability he needed. Further, as the juvenile court observed, Shelly's previous history in the juvenile dependency system showed that even when she was offered reunification services, she was unable to successfully reunify with any of her previous children, which only served to delay permanency and stability for those children. Under the circumstances, the juvenile court was well within its discretion to conclude that D.D.'s interest in permanency and stability outweighed any interest he may have had in the possibility of reunification with Shelly. D.D. "should not be made to wait indefinitely for [Shelly] to become an adequate parent." (*Anthony W.*, *supra*, 87 Cal.App.4th at p. 252.)

In sum, the juvenile court did not err in denying Shelly's section 388 petition.

D.    *Remaining Issues*

Having concluded that the juvenile court properly denied Shelly's section 388 petition, we also determine that there is no merit to two remaining issues raised in this appeal.

First, Shelly challenges the order terminating her parental rights, but she expressly premises that challenge on her success, if any, in obtaining a reversal of the order denying her section 388 petition. As we have affirmed the order denying the petition to modify, we also affirm the order terminating Shelly's parental rights.

Second, the Father has appealed only to the extent that any success by Shelly on her appeal inures to his benefit. As Shelly has not succeeded in her appeal, we also

12

determine that the Father is not entitled to any relief based on the outcome of Shelly's appeal, and we affirm the termination of parental rights as to the Father.

DISPOSITION

The orders of the juvenile court are affirmed.

_____

IRION, J.

WE CONCUR:

_____

NARES, Acting P. J.

_____

HALLER, J.

13